UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KENNETH PERRY,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.:  2:11-cv-00060-MHH |
| } | |
| **SUPREME BEVERAGE** } | |
| **COMPANY, INC.,** } | |
| } | |
| Defendant. | |

## MEMORANDUM OPINION

This case is before the Court on the magistrate judge's report and recommendation. Kenneth Perry brings this action against his former employer, Supreme Beverage Company, alleging race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq* and Section 1981, 42 U.S.C. § 1981, as well as state law claims for outrage and negligent hiring, supervision, and retention. The magistrate judge recommends that the Court grant summary judgment on all of Mr. Perry's claims. For the reasons stated below, the Court adopts and accepts the magistrate judge's report and recommendation on all claims except Mr. Perry's race discrimination claim.

1

I.  **STANDARD OF REVIEW**

The Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This means the Court must "give fresh consideration to those issues to which specific objection has been made." *Jeffrey S. by Ernest S. v. State Bd. Of Educ. Of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No. 94-1609, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163).  The portions of the report and recommendation to which the petitioner has not objected are reviewed for clear error.  *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006).  The Court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

II. **DISCUSSION**

Mr. Perry objects to the magistrate judge's recommendation that the Court grant summary judgment on his race discrimination claim.  (Doc. 43).  In support, Mr. Perry contends that he has identified a similarly situated comparator, or in the alternative, that there is sufficient circumstantial evidence from which a jury could infer discriminatory animus by the employer.  (Doc. 43, pp. 20, 25).  The Court agrees with the magistrate judge's report and recommendation that Mr. Perry has failed to identify a proper comparator, but finds that viewing the facts in the light

most favorable to the plaintiff, there is sufficient circumstantial evidence of racial discrimination to survive summary judgment.

To establish a prima facie case of race discrimination using comparator evidence, Mr. Perry and his identified comparator, Mr. Christopher Phelps, "must be similarly situated in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal quotation omitted). The comparator's conduct must be "nearly identical" to that of the plaintiff. *Id; see also Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).[1] As the magistrate judge points out, Mr. Perry's and Mr. Phelps's alleged misconduct is similar but not sufficiently similar to make Mr. Phelps a proper comparator. (Doc. 42, p. 17).

SBC terminated Mr. Perry after Perry admitted that he made sexual remarks to a female co-worker. (Doc. 19-1, pp. 170–76). Several of Mr. Perry's co-workers overheard the remarks. (Doc. 19-13, pp. 128–30). Human Resources Manager Ira Marcum determined that the remarks violated SBC's sexual harassment policy, and Mr. Marcum terminated Mr. Perry's employment.[2] (Doc. 19-1, pp. 179–80). In contrast, SBC moved Mr. Phelps from a delivery route to the warehouse after a store owner accused Mr. Phelps of harassing a store clerk (who

---

[1] The Report and Recommendation contains a more thorough discussion of comparator standards. (*See* Doc. 42, p. 17).

[2] CFO James Hall was also involved in the decision to terminate Mr. Perry's employment. (Doc. 19-17, pp. 272–73).

was the store owner's wife) by touching her inappropriately, saying she was beautiful, and calling her sweetheart. (Doc. 19-17, p. 126). Mr. Phelps denied any wrongdoing, stating that he did not touch the store clerk's wife. (Doc. 19-17, p. 131–32). When CFO James Hall reviewed surveillance tape of the incident, the video revealed that Mr. Phelps touched the female clerk twice. (Doc. 19-17, pp. 161–62, 166–67). Mr. Hall concluded that the touching did not violate SBC's sexual harassment policy. (Doc. 19-17, pp. 160–61). The tape did not have audio, so Mr. Hall was unable to determine whether Mr. Phelps told the clerk that she was beautiful or called her sweetheart. (Doc. 19-17, p. 132). SBC resolved the matter by having Mr. Phelps watch a video relating to the company's harassment policy and by assigning Phelps to warehouse duty. (Doc. 19-17, pp. 155–56, 161; Doc. 24-1, pp. 7, 8). While the alleged misconduct by Mr. Perry and Mr. Phelps is somewhat similar, it is not identical. Therefore, Mr. Phelps is not a proper comparator.

Mr. Perry does not have to identify a comparator when, as here, there is "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327–28 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."

4

*Id.* at 1328 (internal quotation omitted).  This is a close case, and were it not for the *de novo* standard, the Court would defer to the magistrate judge's well-written report; however, the undersigned finds that the record, taken as a whole and viewed in the light most favorable to Mr. Perry, contains sufficient circumstantial evidence of race discrimination to enable Mr. Perry's discrimination claim to survive summary judgment.

The disparity in treatment between Mr. Perry and Mr. Phelps, while not sufficient to establish a prima facie case of discrimination based on comparator evidence, does serve as circumstantial evidence of discriminatory animus that is part of a larger patchwork of evidence of racial discrimination.  Viewing the facts in the light most favorable to Mr. Perry, SBC terminated Mr. Perry for making remarks that were part of a longstanding joke in which Ms. Browder had participated on previous occasions.  (Doc. 21-5, pp. 7, 9).  SBC did not hesitate to terminate Mr. Perry based on Ms. Browder's complaint.

SBC had demonstrated a quick trigger finger with respect to Mr. Perry on a previous occasion.  In September 2007, before conducting an investigation, supervisor Mike Windham fired Mr. Perry and two other African-American drivers for allegedly mishandling SBC product.  (Doc. 19-17, p. 80).  At the direction of Mr. Hall, Mr. Windham re-hired Mr. Perry when a post-termination investigation

cleared Mr. Perry of wrongdoing.  (Doc. 19-17, p. 253; Doc. 19-4, pp. 105–06; Doc. 19-17, p. 253).

In contrast, SBC offered Mr. Phelps second chances.  With respect to the incident involving the store clerk, when SBC began its investigation, Mr. Phelps lied to Mr. Hall, stating that he did not touch the clerk.  By reviewing video footage from the store, Mr. Hall learned that Mr. Phelps had, in fact, touched the clerk on her lower back and on her shoulder; however, Mr. Hall regarded the touching as non-offensive.  (Doc. 19-17, pp. 160–61).  Despite the fact that he had clear proof that Mr. Phelps lied to him regarding the touching, Mr. Hall did nothing to try to determine whether Mr. Phelps also lied about the remarks that he purportedly made; Mr. Hall simply took Mr. Phelps's word.  (Doc. 19-17, pp. 131–32, 160).  Before the incident with the clerk, Mr. Phelps had been written up for taking unauthorized loans from SBC.  (Doc. 19-17, p. 139).  Still, when it came to allegations of sexual harassment at SBC's customer's store, SBC took Mr. Phelps's word over the store owner's word, asked Mr. Phelps to watch a video relating to SBC's harassment policy, and removed Mr. Phelps from his delivery route.  SBC did not terminate Mr. Phelps for taking unauthorized loans, and the company did not terminate him for his conduct at a customer's store.  When he was asked about the store clerk incident, Marshall Nichols, SBC's current director of corporate operations who previously held a number of other positions in the company, stated

that if Mr. Phelps touched the store clerk and called her sweetheart, then Phelps violated SBC's sexual harassment policy, and he should have been fired. (Doc. 24-31, pp. 4, 57).

In his mosaic of evidence, Mr. Perry offers other examples of conduct that a jury could use to infer discriminatory animus in this case. For instance, Mr. Perry testified that SBC supervisors often denied African-American drivers help with heavy loads, while help was routinely given to Caucasian drivers. (Doc. 19-3, pp. 14–15). Mr. Perry added that SBC supervisors assigned Caucasian drivers to routes in safe neighborhoods, while SBC gave African-American drivers routes in more dangerous neighborhoods where the African-American drivers sometimes were robbed. (Doc. 19-3, pp. 14–15).

Because Mr. Perry has presented sufficient circumstantial evidence to allow a jury to infer intentional discrimination, the Court finds that Mr. Perry's race discrimination claim survives summary judgment. *See Ware v. Supreme Beverage Company*, 927 F. Supp. 2d 1244, 1254 (N.D. Ala. 2013) (denying summary judgment on a race discrimination claim based on circumstantial evidence, including that supervisors failed to offer plaintiff the same help they offered Caucasian employees). At the summary judgment stage, the Court examines this evidence in the light most favorable to Mr. Perry. Although Mr. Perry has presented sufficient circumstantial evidence of racial discrimination to survive

7

summary judgment, much of this evidence is strongly contested. A jury will have to resolve the dispute unless the parties can resolve it themselves.

The Court adopts and accepts the magistrate judge's report and recommendation on all other claims.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS AND ACCEPTS IN PART** the magistrate judge's report and recommendation. The Court will enter a separate order consistent with this memorandum opinion granting summary judgment on all claims except Mr. Perry's race discrimination claim.

**DONE** and **ORDERED** this January 9, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE